MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

SHEILA A.G. ARMBRUST (CABN 265998)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6961
    FAX: (415) 436-7027
    sheila.armbrust@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 15-00137 TEH |
| Plaintiff, | ) GOVERNMENT'S SENTENCING |
| v. | ) MEMORANDUM |
| CRAIG PATRICK BURT, | ) Date: September 14, 2015 |
| | ) Time: 2:30 p.m. |
| Defendant. | ) Hon. Thelton E. Henderson |

## INTRODUCTION

The United States respectfully requests that this Court accept the plea agreement submitted by the parties under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. On, September 14, 2015, the defendant, Craig Patrick Burt, will stand before the Court to be sentenced following his plea to Counts Three and Four of the Indictment, charging receipt of child pornography and travel with intent to engage in illicit sexual conduct, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2423(b). The defendant pled guilty on June 15, 2015, and he has been in continuous custody since February 17, 2015.

The parties have agreed that the proper disposition in this case is a term of imprisonment between 121 and 151 months, a supervised release term of 5 years to follow (with conditions to be

determined by the Court and including the conditions agreed to by the parties), a fine to be determined by the Court, and a mandatory special assessment of $200. It is the government's view that a sentence of 151 months is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a).

The defendant has pled guilty to Counts Three and Four of the indictment, and he did so in a timely fashion. For that reason, the government moves at this time to reduce the defendant's Adjusted Offense Level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). Based on this motion, the government agrees with the Probation Officer that the defendant's Total Offense Level is 32 and that his Criminal History Category is I.

The government also will move at the time of sentencing to dismiss Counts One and Two charging sex trafficking and conspiracy to engage in sex trafficking, violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(1) and 1594(c).

## THE DEFENDANT'S OFFENSE CONDUCT

Starting in 2011 and continuing through February 2015, the defendant corresponded with "Lorraine," an individual living in the Philippines, using the Yahoo! Messenger internet chat service. Presentence Report ("PSR") at ¶ 6. Starting in July 2013, and continuing through February 2015, the defendant and Lorraine created what the defendant called his "family," which consisted of the defendant and Lorraine as the "daddy" and "mommy," and minor females aged 10 through 13 who were their "girls." *Id.* at ¶ 8. Lorraine told the defendant that these girls were homeless and that the defendant could help them by providing clothing and money. *Id.* As members of the "family," the girls aged 10 through 13 would pose for nude photographs and nude webcam shows that they would send to the defendant, with some depicting the girls engaged in sexual acts or lasciviously displaying their genitals. *Id.* at ¶¶ 8, 11. In the defendant's words documenting his twisted view of family life, he stated on September 21, 2013, "family that makes love together stays together." *Id.* at ¶ 12.

Over the course of an eighteen month period, the defendant received photographs of at least 10, but fewer than 150 images of girls aged 10-15 engaged in sexually explicit conduct. *Id.* at ¶ 28. On several occasions, the defendant sent money to Lorraine through Western Union. *See, e.g.*, ¶ 10, 20. The defendant also sent clothing to Lorraine for the girls. On November 18, 2013, the defendant wrote to Lorraine that he was sending a box of clothing with "matching thong panties for my babies," and in

some photographs that the defendant received, the girls are wearing lingerie with open crotch thongs. *Id.* at ¶¶ 14, 18. The defendant sent photographs of himself, including nude photographs of his genitalia, to Lorraine. *Id.* at ¶ 15.

The defendant made plans to meet his "girls" in the Philippines, stating in numerous text conversations that he was looking forward to engaging in actual sexual contact with the girls. He stated that he was "eating healthy" so that he could "tske [sic] care of my 3 girls" and so that "all my girls get some of daddy's cock." *Id.* at ¶ 12. The defendant talked with Lorraine about what sexual acts the girls would be ready to perform with him. *Id.* at ¶ 20. The defendant booked a flight to the Philippines, telling Lorraine that he would be there starting on January 31, 2015. *Id.* at ¶ 19. This would not be the defendant's first trip to the Philippines. He had been on several prior occasions, making 11 trips between 2000 and 2011. *Id.* at ¶ 7. The defendant spent some of the time on these trips purportedly engaged in charity work for Children's Grace, a charity for impoverished children living in the Philippines. *Id.* The defendant flew to the Philippines on January 30, 2015, returning to the United States on February 15, 2015. *Id.* at ¶¶ 21, 25. He messaged Lorraine his hotel location so that he could meet with her and the girls. *Id.* at ¶¶ 21-22. It does not appear that the defendant met either Lorraine or the girls in the Philippines, as the defendant sent texts on January 31, 2015 asking her "what's going on," and threatening: "If you don't come over then I will give all the stuff away." *Id.* at ¶ 23.

## DISCUSSION

### I.   Statutory Range

The defendant has pled guilty to Count Three of the Indictment charging Receipt of Child Pornography. This offense provides for a mandatory minimum sentence of 60 months of imprisonment, a maximum 20 year term of imprisonment, a maximum fine of $250,000, a supervised release term of not less than 5 years, a maximum supervised release term of lifetime, registration as a sex offender, and a mandatory special assessment of $100.

The defendant also has pled guilty to Count Four of the Indictment charging Travel with Intent to Engage in Illicit Sexual Conduct. This offense provides for a maximum 30 year term of imprisonment, a maximum fine of $250,000, a supervised release term of not less than 5 years, a maximum supervised release term of lifetime, registration as a sex offender, and a mandatory special assessment of $100.

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-CR-00137 TEH                 3

## II. The Defendant's Sentencing Guidelines Calculation.

As set forth in the PSR, the Sentencing Guidelines calculation for the defendant's offense level for Counts Three and Four is as follows:

Group 1:  Count Three:  Receipt of Child Pornography

| | | | |
|---|---|---|---|
| a. | Base Offense Level: (U.S.S.G. § 2G2.2) | | 22 |
| b. | Specific Offense Characteristics (U.S.S.G. § 2G2.2(b)(1)) (Defendant's conduct limited to receipt, and defendant did not traffic in, or distribute, material) | | -2 |
| c. | Specific Offense Characteristics (U.S.S.G. § 2G2.2(b)(2)) (Defendant possessed material involving minors who had not attained the age of 12 years) | | +2 |
| d. | Specific Offense Characteristics (U.S.S.G. § 2G2.2(b)(6)) (Defendant received images containing child pornography via the internet and used a computer) | | +2 |
| e. | Specific Offense Characteristics (U.S.S.G. § 2G2.2(b)(6)) (Defendant possessed more than 10, but fewer than 150 images containing child pornography) | | +2 |
| f. | Adjusted Offense Level: | | <u>26</u> |

Group 2:  Count Four:  Travel with Intent to Engage in Illicit Sexual Conduct

| | | | |
|---|---|---|---|
| a. | Base Offense Level: (U.S.S.G. § 2G1.3) | | 24 |
| b. | Specific Offense Characteristics (U.S.S.G. § 2G1.3(b)(3)(8)) (Offense involved the use of a computer to entice, encourage, offer, and solicit a person to engage in prohibited sexual conduct with a minor) | | +2 |
| c. | Specific Offense Characteristics (U.S.S.G. § 2G1.3(b)(5) (Offense involved a minor who had not attained the age of 12 years) | | +8 |
| d. | Adjusted Offense Level: | | <u>34</u> |

Chapter Three Adjustments

Multiple Count Adjustment (U.S.S.G. § 3D1.4(a))

| Group # | Adjusted Offense Level | Units |
|---|---|---|
| 1 | 26 | .5 |
| 2 | 34 | 1.0 |
| Total Units | | 1.5 |

Combined Adjusted Offense Level

a. Highest Offense Level                                                                  34
   (U.S.S.G. § 3D1.4)
   (Group with highest offense level)

b. Increase In Offense Level                                                              +1
   (U.S.S.G. § 3D1.4(a))
   (One additional unit)

c. Acceptance of Responsibility:                                                          -3
   (U.S.S.G. §§ 3E1.1(a) and (b))

d. Adjusted Offense Level:                                                                32

The defendant's prior criminal convictions result in a criminal history score of 0 and a Criminal History Category I, *see* PSR ¶¶ 64, 65. His Sentencing Guidelines range, therefore, is 121-151 months. *See* PSR Sentencing Recommendation.

**III.   Plea Agreement**

The plea agreement contemplates a sentence of 121-151 months imprisonment, 5 years of supervised release (with conditions to be fixed by the Court), a fine to be determined by the Court, and a $200 special assessment. In addition to the supervised release conditions fixed by the Court, the parties agree that the defendant should be subject to the following search condition:

> The defendant shall submit to a search of his person, residence, office, vehicle, or any property under his control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

The parties further agree that the defendant should be subject to the following special condition limiting his use of internet-connected devices:

> The defendant shall allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer, telephone, or other internet-connected device that the defendant possesses or has access to, including any internal or external peripherals or

> electronic storage device.  The defendant shall allow the temporary removal of any such devices for a more thorough inspection, and the defendant shall not use or possess any data encryption techniques or programs.  The defendant shall not access or use any file-sharing P2P network or software without the consent of the Probation Officer.  The defendant shall not use Yahoo! Messenger or any other internet chat program.

The Probation Officer concurs in the parties' sentencing guideline calculation, recommending a mid-range sentence of 136 months, and concurs with the parties' recommendation of a 5 year term of supervised release and the $200 special assessment.

**IV.     Section 3553(a) Factors**

"The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of section 3553(a).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted).  In sentencing the defendant, this Court must consider the directives set forth in Title 18, United States Code, Section 3553(a).  *See United States v. Booker*, 543 U.S. 220 (2005).  To start, the Court must consider the correctly calculated Guidelines range.  *Id*.  However, the Court may not presume that a sentence within the Guidelines range is reasonable because the Guidelines are one among the several Section 3553(a) factors that courts are directed to consider in arriving at an appropriate sentence.  *Id*.  These goals include the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public from further crimes from the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  18 U.S.C. § 3553(a).  "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)."  *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc).

The government believes that a within Guideline range sentence of 151 months—the high-end of the range agreed to by the parties—is the proper disposition in this case and sufficient, but not greater than necessary, to achieve the goals of section 3553(a).  The government draws the Court's attention to the following Section 3553(a) factors supporting the recommended Guideline sentence:

//

//

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-CR-00137 TEH                                       6

### A. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The child pornography that the defendant possessed records the sexual exploitation and rape of real children, serious crimes in the view of Congress. The defendant's receipt of these destructive images and his travel to the Philippines with the intent to have sex with the girls who appeared in the images warrants a 151 month term of imprisonment. The defendant sought out images depicting the abuse of young girls, thereby encouraging and supporting what Congress has called, "a national tragedy" in which "[e]ach year tens of thousands of children under the age of 18 are believed to be filmed or photographed while engaging in sexually explicit acts for the producers own pleasure or profit." H.R. Rep. 98-536 at 1 (1983), *reprinted in* 1984 U.S.C.C.A.N. 492. In 1996, in passing the *Child Pornography Prevention Act of 1996*, Congress recognized that the production of child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved," since it creates a permanent record of the child's abuse, allowing for continued victimization of that child. S. Rep. 104-358 § 2 (1)(2) (1996).

The Ninth Circuit and other courts recognize that the victims of child pornography are the sexually exploited children depicted in the image. *United States v. Boos*, 127 F.3d 1207 (9th Cir. 1997); *see United States v. Sherman*, 268 F.3d 539, 534-48 (7th Cir. 2001) (discussing *Boos* and cases from other circuits). In rejecting the argument that the only victim of child pornography trading is society in general, the Ninth Circuit observed that it was the sexually abused children:

> who were acted on and adversely affected, who often times were forced to participate in the production of the pornography in which Boos traded, who were injured (both physically and psychologically) as a result of Boos's patronage of the porn industry, who were sacrificed to satisfy Boos's curiosities, who were subjected to the cruelest form of oppression, hardship, and mistreatment . .., and whose lives were quite possibly destroyed in the process.

*Boos*, 127 F.3d at 1210. Consumers of child pornography fuel demand for the unlawful production of this material. The Ninth Circuit has stated that that "merely possessing child pornography is not a victimless crime," because possession "fuels the demand for the creation and distribution of child pornography," and evidence shows "the harm that children suffer when they are used in the creation of child pornography[,] . . . when that pornography is distributed to others." *United States v. Daniels*, 541

F.3d 915, 924 (9th Cir. 2008). "The greater the customer demand for child pornography, the more that will be produced." *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). Even if consumers of child pornography do not themselves molest children, their actions contribute to the abuse of children. "Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography." *United States v. Goff,* 501F.3d 250, 259 (3rd Cir. 2007).

In this case, not simply content to receive images of children engaged in sexual acts, the defendant also travelled to the Philippines with the express goal of satisfying his desire to have sex with his "girls." Here, the defendant's conduct—first receiving child pornography and then traveling with the intent to rape children—is exactly the progressive sexual exploitation of children that Congress identified in imposing strict penalties for sexual abuse crimes. Congress found that the mere existence of pornographic materials containing children "creates the potential for many types of harm in the community and presents a clear and present danger to all children; and [] inflames the desires of child molesters, pedophiles, and child pornographers who prey on children," leading to the abuse and exploitation of children as creation and production of additional pornographic material is needed. S. Rep. No. 104-358, § 2 (10).

The defendant's crimes against children warrant a sentence at the high-end of the Guideline range, and a sentence of 151 months reflects the seriousness of the offenses to which the defendant is pleading, promotes respect for the Congressional findings that led to such strict laws, and provides just and reasonable punishment for the defendant's offenses.

**B.     The Nature and Circumstances of This Offense**

The defendant exploited at least three girls, one as young as 10. He knew their age, even asking to see photographs of the girls in their school uniforms. With the aid of Lorraine, the defendant sought to exploit these girls by receiving photographs and videos of the girls engaged in sexual acts and lasciviously displaying their genitals. These images are not harmless. They depict real abuse. The victims live in the Philippines, and law enforcement has not yet been able to locate them to obtain victim statements. However, the fact that there are no known victims with Victim Impact Statements on file does not minimize the harm perpetrated on the children depicted in the images sought out by the

defendant. As the Probation Officer concludes, it is likely that these children have suffered physical and psychological harm as a result of the defendant's interest in gratifying his sexual appetite.

Any argument that the defendant's crimes did not seriously injure anyone fails to account for the gravity of the direct and indirect impacts of the defendant's criminal conduct. By soliciting child pornography, the defendant helped to maintain and expand a marketplace for such images. The photographs that he received could now be in the hands of others. So long as a marketplace for child pornography exists, more pedophiles' interests will be fed and reinforced and more children will be victimized in order to satisfy those interests. Though we may never be able to perfectly measure the depth of the harm, know the name of every victim, or quantify the defendant's contribution to the harms that flow from this marketplace, they are serious harms and are not to be lightly dismissed.

In this case, the sentence of 151 months is justified because the defendant was not simply content to receive photographs and videos of child pornography. He flew to the Philippines intent on raping his "girls" and living out his fantasy that a "family that makes love together stays together." *Id.* at ¶ 12. A sentence of 151 months is an appropriate punishment given the heinous nature of the defendant's crimes, and it is not greater than necessary to punish him for stripping at least three little girls of their childhood.

### C. The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public

The defendant—and future defendants—must be deterred from using the internet to exploit innocent young victims, including those in foreign countries who may be difficult to locate and who are without the opportunity to give voice to the harm that they have suffered. A sentence of 151 months would deter the defendant—and those who would engage in similar conduct—from trying to exploit children, regardless of where they are located throughout the world. A sentence at the high-end of the Guidelines would deter this defendant and would-be defendants from seeking out child victims in the United States and abroad and would show the public that the courts are committed to protecting children from predators. This sentence also will protect the public, especially young children, from the defendant by removing him from society for a considerable period of time.

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-CR-00137 TEH                                           9

**CONCLUSION**

In full consideration of the 3553(a) factors and the goals of sentencing, the government respectfully requests that the Court accept the plea agreement of the parties and sentence the defendant to a 151 month term of imprisonment, a supervised release term of 5 years to follow (with conditions to be determined by the Court and including the search condition agreed to by the parties), a fine to be determined by the Court, and a mandatory special assessment of $200.

Dated:  August 31, 2015               Respectfully submitted,

                                      MELINDA HAAG
                                      United States Attorney

                                      By:  _____/s/_____
                                           SHEILA A.G. ARMBRUST
                                           Assistant United States Attorney